HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JO ANN DAVIES,

    Plaintiff,

v.

THE BOEING COMPANY
EMPLOYEE BENEFITS PLAN
COMMITTEE, et al.,

    Defendants.

CASE NO. C10-1242RAJ

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

## I. INTRODUCTION

The court conducted a bench trial of this matter on June 17, 2011. In this case brought under the Employee Retirement Income Security Act ("ERISA"), Plaintiff challenges Defendants' decision to terminate her short-term disability benefits. After considering the parties' briefing and supporting evidence, and the arguments of counsel , the court enters these Findings of Fact and Conclusions of Law. For the following reasons, the court enters judgment for the Defendants.

## II. FINDINGS OF FACT[1]

1. Plaintiff Jo Ann Davies was hired by The Boeing Company in 1997 as a business process analyst. *See* Administrative Record[2] ("AR") 401 (business process analyst job description).

2. Ms. Davies had a history of neck and back pain as a result of a car accident in the 1980s, and she underwent a cervical spine fusion in August 2007. After the surgery, Ms. Davies still experienced chronic neck pain, but the use of pain medication allowed her to return to work in October 2007.

3. In April 2009, Ms. Davies reported that new assignments at work "required a stressful and intense work environment," and that her pain medication left her unable to focus, concentrate, and function.

4. Her primary care physician, Dr. Howard Miller, recommended in an April 8, 2009 letter that, based on a diagnosis of peripheral neuropathy, cervical neuropathy, and herniated discs, Ms. Davies be restricted from lifting, pushing, pulling, and bending. Dr. Miller also indicated that Ms. Davies should be able to return to work in the future.

5. Ms. Davies applied for short-term disability (STD) benefits with the Defendant The Boeing Company Employee Benefits Plan Committee ("the Committee"), which is administered by Defendant Aetna Life Insurance Company ("Aetna"). Aetna approved Ms. Davies' application for STD benefits, effective April 10, 2009.

6. Ms. Davies returned to work on May 11, 2009, and worked through May 25. Her STD benefits were reactivated on May 26, 2009, based on a May 20, 2009 report

---

[1] Unless noted otherwise, these facts are undisputed.

[2] The parties submitted an administrative record as a trial exhibit, which consisted of the plan documents and Ms. Davies' claims file.

from Dr. Miller indicating that Ms. Davies should not work based on continuing chronic neck pain and secondary depression. Dr. Miller prescribed multiple medications for Ms. Davies' pain and depression.

7.  On June 8, 2009, Aetna approved STD benefits for Ms. Davies through June 30, and then extended those benefits through August 10 on July 28, and extended them again through September 20 on August 31. During that period of STD coverage, Dr. Miller referred Ms. Davies to a neurosurgeon, Dr. David Lundin, who found that Ms. Davies' neurologic function was normal, but recommended that Ms. Davies consult a pain management specialist. *See* AR 514. Ms. Davies continued to seek treatment with Dr. Miller as well.

8.  On September 24, Aetna notified Ms. Davies that the medical documentation in its file no longer supported a finding of disability, and thus Aetna was placing Ms. Davies' claim into "pending" status and that a final decision would be made no later than October 23, 2009.

9.  As part of Aetna's claims review, Ms. Davies completed a questionnaire addressing her work duties and identifying which activities (sitting or standing for short periods of time) caused her pain.

10. Dr. Miller also filled out a "Capabilities and Limitations" worksheet indicating that Ms. Davies should not climb, crawl, kneel, lift, pull, push, reach above the shoulder, forward reach, carry, bend, twist, firm hand grasp, fine manipulation, gross manipulation, repetitive manipulation, sit, stand, or stoop. He indicated that Ms. Davies could occasionally walk and hand grasp, but should not lift any amount of weight more than one pound.

11. Aetna also hired neurologist Dr. Vaughn Cohan to conduct a record review of Ms. Davies' claim file. Dr. Cohan spoke with Dr. Miller, and eventually concluded that Ms. Davies' file failed to document a degree of pain of sufficient severity and/or intensity to preclude sedentary work after September 21. He found that,

|   |   |   |
|---|---|---|
| 1 | | despite Ms. Davies' complaints of neck and back pain, she had normal neurologic |
| 2 | | exam findings. Dr. Cohan's report noted that a comprehensive report from a pain |
| 3 | | management specialist would be helpful, but he did not contact Dr. Hong or |
| 4 | | review his records. |
| 5 | 12. | Aetna notified Ms. Davies on October 6, 2009, that it had decided to deny her |
| 6 | | claim for STD benefits after September 20, 2009. Aetna also advised her that |
| 7 | | because she had not received the required twenty-six weeks of STD benefits, Ms. |
| 8 | | Davies' claim for long-term disability (LTD) benefits was denied. |
| 9 | 13. | Ms. Davies appealed Aetna's denial of her STD benefits, and submitted additional |
| 10 | | documents including a letter from Dr. Lundin, a statement from Dr. Miller, Dr. |
| 11 | | Miller's "Capabilities and Limitations" worksheet, Dr. Miller's chart notes (dated |
| 12 | | July 20, September 10, and September 17, 2009), Dr. Miller's May 20 report, and |
| 13 | | questionnaires about Ms. Davies' work history and other income. |
| 14 | 14. | Aetna sent Ms. Davies' file for another record review, conducted this time by Dr. |
| 15 | | Elena Antonelli. She reviewed the same record that Dr. Cohan had reviewed, but |
| 16 | | also reviewed the materials submitted by Ms. Davies as part of her appeal, as well |
| 17 | | as the records from Ms. Davies' visit to Dr. Hong for a pain management |
| 18 | | evaluation. Dr. Antonelli tried twice to contact Dr. Lundin to discuss her |
| 19 | | perspective on Ms. Davies' file, but Dr. Lundin never responded. |
| 20 | 15. | Dr. Antonelli did speak with Dr. Miller, however. Dr. Miller reiterated that Ms. |
| 21 | | Davies was not a candidate for further surgery, but noted that she has degenerative |
| 22 | | disease of the cervical spine and cervical myelopathy, and depression. He also |
| 23 | | stated that Ms. Davies suffered side effects from pain medication in the past, but |
| 24 | | did not currently do so. |
| 25 | 16. | Dr. Antonelli also contacted Dr. Hong, who stated that he believed Ms. Davies |
| 26 | | was limited in her activities, but he did not identify which activities she could |
| 27 | | perform. Dr. Antonelli ultimately concluded that there was insufficient evidence |

| | |
|---|---|
| 1 | "supportive of functional impairment during the entire time frame in question of |
| 2 | September 21, 2009, through the present in that she would be able to function in |
| 3 | her own sedentary level occupation as a Business Project Analyst." |
| 4 | 17. She went on to opine: "It is not entirely clear why [Ms. Davies'] pain is considered |
| 5 | to be totally debilitating." Dr. Antonelli also concluded that there was a lack of |
| 6 | evidence showing that Ms. Davies' pain medication interfered with her job or had |
| 7 | side effects that would cause functional limitations. |
| 8 | 18. After Dr. Antonelli summarized her conclusions on November 11, 2009, Aetna |
| 9 | requested that she review additional documents from Dr. Miller that Ms. Davies |
| 10 | had recently submitted. In a letter, Dr. Miller opined that Ms. Davies was |
| 11 | completely disabled. Dr. Antonelli spoke with Dr. Miller on the telephone and Dr. |
| 12 | Miller said he would look into ordering a Functional Capacity Evaluation, to get |
| 13 | more information about Ms. Davies' impairments. |
| 14 | 19. On December 18, 2009, Dr. Antonelli concluded that the new information |
| 15 | submitted by Dr. Miller did not alter her original conclusion, specifically finding |
| 16 | that there was no evidence that Ms. Davies could not perform the functions of her |
| 17 | job if she took pain medication. |
| 18 | 20. Aetna advised Ms. Davies of this conclusion on December 29, 2009. Ms. Davies |
| 19 | filed this lawsuit to appeal Aetna's claim denial. |

### III.  CONCLUSIONS OF LAW

1. This court has jurisdiction under 28 U.S.C. § 1331.
2. The standard of review to be applied to the court's review of Aetna's decision[3] to deny Ms. Davies' STD benefits claim is abuse of discretion. The Plan at issue

---

[3] The only issue before the court is whether Aetna abused its discretion in denying Ms. Davies' claim for STD benefits. The court will not, therefore, consider Ms. Davies' speculative arguments that a conflict of interest results from Aetna's administration of the LTD plan.

here unambiguously provides the administrator with discretionary authority to make benefit determinations, and thus the applicable standard of review of those determinations is abuse of discretion. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006).

3. An ERISA plan administrator is required to engage in a "meaningful dialogue" with a claimant, and must provide him or her with a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997); 29 C.F.R. § 2560.503-1(g).

4. The Plan required Ms. Davies to show, in order to receive STD benefits, that an accidental injury or illness prevented her from "performing the material duties of your own occupation or other appropriate work [Boeing] makes available."

5. Aetna did not abuse its discretion in finding that Ms. Davies had not made such a showing. Ms. Davies' condition had not changed since 2009 and her neurologic function continued to be normal; no treatment provider opined that Ms. Davies' condition was worsening. The only change that took place in 2009 was that Ms. Davies stopped taking her pain medication after her job assignments changed. Ms. Davies' refusal to take pain medication does not amount to an "accidental injury" or "illness," particularly where Dr. Antonelli found that there was no documentation to support a conclusion that Ms. Davies' pain medication would interfere with her job duties or cause functional limitations. *See* AR 300.

6. Furthermore, Dr. Antonelli's reports reiterate her conclusion that Ms. Davies had failed to establish that she could not perform her sedentary job functions. *See* AR 300. Aetna properly relied on that conclusion to determine that Ms. Davies was not entitled to STD benefits.

7. The court also concludes that Aetna engaged in a meaningful dialogue with Ms. Davies. Aetna's original decision to terminate STD benefits was communicated in a four-page letter that described the benefit requirements and summarized Dr. Cohan's review of Ms. Davies' records and his consultation with Dr. Miller. *See* AR 325-328. Aetna identified the documents that were missing that would show a functional impairment, and informed Ms. Davies of the appeal deadline. AR 327-328. Aetna also went on to explain in detail why Ms. Davies' appeal was denied, summarizing Dr. Antonelli's review. *See* AR 288-290. Dr. Antonelli also submitted a supplemental report after reviewing new evidence from Dr. Miller. *See* AR 291-93.

8. Though Dr. Antonelli's report mentioned that Dr. Miller was going to consider ordering a functional capacity evaluation, in order to determine the scope of Ms. Davies' impairments, Dr. Antonelli did not request such an evaluation before denying Ms. Davies' appeal because the evidence in the record (namely Ms. Davies' ability to perform her job functions until April 2009) did not support a finding that Ms. Davies was unable to perform her job functions due to disability or sudden illness.

9. This case is distinguishable from *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008). In *Saffon*, the plaintiff was informed for the first time in the defendant's final denial of benefits that defendant lacked a means of objectively testing plaintiff's ability to perform her job (such as a functional capacity evaluation). *See* 522 F.3d at 871. Because the plaintiff was informed of the lack of evidence "too late to do [plaintiff] any good," the court found that the plaintiff had been prevented from responding fully at the administrative level. *See id.* But in this case, Ms. Davies was aware during the entire review process that Aetna's physician reviewers had concluded that there was no evidence of functional impairment given Ms. Davies' sedentary job. *See*

AR 319 (Dr. Antonelli's Nov. 11, 2009 report), AR 334 (Dr. Cohan's Oct. 2, 2009 report). Thus, Aetna consistently found (and documented in multiple reports) that the record did not support a finding of functional impairment, and did not raise the impairment issue for the first time in the final denial, as in *Saffon*. Ms. Davies had adequate notice and time to supplement the record on this issue.

10. The court finds that Aetna did not abuse its discretion in relying upon the reports of Dr. Cohan and Dr. Antonelli, despite Dr. Miller conclusory opinion that Ms. Davies was "disabled." *See* AR 480. Dr. Miller's opinion is not supported by an explanation of Ms. Davies' job-related impairments, and Dr. Miller's specific findings are internally inconsistent. For example, Dr. Miller found that Ms. Davies could never sit or grasp with her hands, yet also found that she could drive a car.

10. Ms. Davies also cites *Saffon* as support for her argument that Aetna breached its fiduciary duty by failing to notify Ms. Davies of Dr. Lundin's failure to respond to Dr. Antonelli. In *Saffon*, the plan administrator communicated with the claimant's treating physician without the claimant's knowledge and imposed a response deadline on the physician. Because the claimant aware of the communication nor the deadline, the claimant was not able to urge the physician to respond or to request a deadline extension. Thus, the *Saffon* court held that "[i]f a claims administrator communicates with a doctor who has treated a beneficiary, it must disclose that fact to the patient at a meaningful time." 522 F.3d at 873 n.4. But here, Ms. Davies was made aware in Dr. Antonelli's November 11, 2009 report that Dr. Lundin had failed to respond to multiple inquiries. Ms. Davies went on to submit new documentation after that report was issued, and presumably could have contacted Dr. Lundin herself to urge him to respond. Thus, the court concludes that Ms. Davies received meaningful notice of Aetna's communications

1  with Dr. Lundin, given that she had opportunity to follow up with Dr. Lundin if
   she wished.

11. This case is also distinguishable from *Nash v. Life Ins. Co. of N. Am.*, 2010 WL 5139087 (S.D. Cal. Dec. 9, 2010). In that case, the court found that the defendant administrator abused its discretion in rejecting without explanation plaintiff's evidence that, *inter alia*, medication side effects caused functional impairment. *Nash*, 2010 WL 5139087 * 33. In this case, Aetna's physician reviewers explained the reason why they believed the record failed to establish that Ms. Davies' pain medication adversely affected her ability to work. *See* AR 334 ("[Davies] appears to be maintained on narcotic analgesic agents, but she remains awake and alert with relatively normal neurologic exam findings and normal cognition and speech. It is my opinion that the documentation is not indicative of a functional impairment for work based on adverse medication effect."); AR 293 ("There is no documentation of significant side effects from her medications that is preventing her from being able to do a sedentary job[.]"); AR 298, 300 ("[Davies'] medications have caused problematic side effects in the past but none are present now . . . She did not tolerate some medications in the past but there is no documentation on or after 09/21/09 of specific medication side effects that are causing functional limitations.") Aetna's reviewers repeatedly found that Ms. Davies' record did not show that she had any current medication side effects, whereas the *Nash* plaintiff had submitted evidence of side effects that was rejected.

12. Finally, though Ms. Davies argues that Aetna abused its discretion by not investigating her medication side effects, the record shows that Aetna's reviewers discussed medication side effects with Ms. Davies' providers and ultimately concluded that she did not have any current adverse effects. *See* AR 298, 300. This conclusion is detailed in the reviewing physician reports, and thus the court

rejects Ms. Davies' contention that Aetna abused its discretion by failing to consider adverse side effects.

### IV. CONCLUSION

For the foregoing reasons, the court directs the clerk to enter judgment for the Defendants.

Dated this 15th day of September, 2011.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge